# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

ROBERT A. STONEROCK,           :

     Petitioner,            :    Case Nos. 3:02cr00005-1
                                                    3:12cv00157

 vs.                      :    District Judge Walter Herbert Rice
                                    Chief Magistrate Judge Sharon L. Ovington

UNITED STATES OF        :
AMERICA,

                       :

     Respondent.

                       :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Robert A. Stonerock previously pled guilty to one count of conspiring to possess with intent to distribute and to distribute over 1000 kilograms of marijuana, a violation of 21 U.S.C. §§ 841(a)(1) and b(1)(A) and 21 U.S.C. § 846.  He is currently serving a 120-month sentence.  (Doc. # 269).

This matter is before the Court on Stonerock's Pro Se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence (Doc. # 274); the Government's Response (Doc. # 289); Stonerock's various additional Motions and filings (Doc. #s 275-77, 279, 290-92); and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Stonerock seeks appointment of counsel, discovery, and an evidentiary hearing on his claim as well as the following relief:

> Order that the Government file [the] recommendation that he receive [a] downward departure just as his co-defendants based upon racially motives of those similarly situated and the Court grant such, or alternatively grant Movant a new trial based upon a conflict of interest which violated his 6th Amendment Rights to counsel.

(Doc. #274, PageID at 1812).

The Government contends that Stonerock's Motion lacks merit.

## II.  <u>Stonerock's Direct Appeal and Remand</u>

After the District Court entered judgment against Stonerock and sentenced him, he filed a direct appeal in the United States Court of Appeals for the Sixth Circuit, raising several constitutional claims and seeking specific enforcement of his plea agreement.  The Court of Appeals for described the factual background in pertinent part:

> From approximately January 1997 through November 2, 2001, Stonerock conspired with various individuals to distribute marijuana in the Dayton, Ohio area. Stonerock and his co-conspirators obtained marijuana from suppliers in Arizona and distributed it in the Dayton area, in exchange for money.  Over 1,000 kilograms of marijuana were attributable to Stonerock personally.

> On November 2, 2001, the Government executed search warrants at Stonerock's residence and seized approximately $160,000 in cash from the washing machine and bedroom, and two semiautomatic handguns, found under the sofa in the family room and in the master-bedroom closet. Stonerock was arrested later that day.

> Approximately one month after Stonerock's arrest, Stonerock's counsel (at the time, Jon Paul Rion and John H. Rion) informed the Government that Stonerock had information regarding his case to pass along. Stonerock met with Drug Enforcement Special Agent Joseph Hathaway a number of times and provided information.

2

A grand jury returned a two-count indictment against Stonerock and his co-defendant Stephen Mobley, Jr., on January 22, 2002. The indictment originated in Arizona, and charged Stonerock with one count of knowingly and intentionally conspiring to possess with the intent to distribute and to distribute over 1000 kilograms of marijuana, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii) and 846 (attempt and conspiracy), and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) and (2). Because Stonerock had a prior marijuana trafficking conviction, he was prohibited from owning a firearm.

In October 2002, Stonerock changed counsel—from Rion and Rion to Matthew Arntz and George Katchmer. In January 2003, pursuant to a written plea agreement, Stonerock entered a plea of guilty to count one of the indictment, in exchange for which the Government dismissed the firearm count.

In February 2003, after Stonerock pled guilty, he was indicted in a drug and racketeering case in Arizona. The original case (the instant case) involved a marijuana distribution organization focused primarily in the Tucson area, while the later case focused on the Phoenix area.

The Presentence Report (PSR) in the instant case calculated the Guidelines range at 135 to 168 months' imprisonment, and recommended a 140–month sentence. The PSR scored Stonerock's offense level at 34, which included a 2–point enhancement for a firearm under U.S.S.G. § 2D1.1(b)(1). In May 2003, Stonerock objected to the PSR, filed a motion for departure and requested a hearing, arguing that the firearm enhancement was improper and that the PSR's criminal history calculation was overstated his criminal history. Several months later, Stonerock filed a sentencing memorandum reasserting these claims, and adding that he had provided the Government substantial assistance (such that he should receive a reduction under U.S.S.G. § 5K1.1).

During a telephone conference set by the court, the Government agreed that Stonerock provided information, but asserted that it was not substantial. The Government stated it would not file a § 5K1.1 departure because Stonerock had "minimized some of the information that he's provided," had not spoken about several issues that were brought up in the plea agreement, and because of the pending Arizona matter. After the telephone conference, at the court's request, Agent Hathaway met with Stonerock to provide Stonerock another opportunity to qualify for a § 5K1.1 reduction. Agent Hathaway later testified that Stonerock failed to cooperate completely by refusing to answer questions

regarding his finances and regarding local (Dayton, Ohio) co-conspirators.

In February 2004, Stonerock filed a second motion for downward departure, again raising the substantial assistance issue and requesting a sentencing hearing. Over the Government's objection on the ground that Stonerock failed to allege an unconstitutional motive, a hearing was held at which Agent Hathaway testified regarding Stonerock's assistance and the firearm enhancement.

In July 2004, Stonerock's previous attorneys, Rion and Rion, substituted as Stonerock's counsel, replacing Matthew Arntz and George Katchmer. On January 26, 2005, two years after entering a guilty plea, Stonerock moved to vacate his plea.

In April 2006, Stonerock filed an updated sentencing memorandum, requesting an evidentiary hearing to elicit testimony regarding his cooperation, and to compel the government to file a § 5K1.1 motion. The Government opposed a hearing on the basis that Stonerock had failed to allege an unconstitutional motive. The district court held an evidentiary hearing in June 2006, following which the court asked the Government to present testimony regarding the status of the Arizona case. DEA Special Agent John Murphy, the Arizona case agent, testified in November 2006.

Later in November 2006, another evidentiary hearing was held at which Stonerock and his previous counsel, George Katchmer, testified. Katchmer testified that during the time he represented Stonerock, he (Katchmer) did not promise Stonerock he would qualify for the mandatory-minimum safety valve under U.S.S.G. § 5C1.2. Stonerock conceded that his attorneys made him no promises regarding the safety valve, but testified that his understanding was that he was eligible for it. At a later hearing, Katchmer's co-counsel, Arntz, testified he made no promises to Stonerock regarding the safety valve.

At the May 15, 2007 sentencing hearing, the district court stated it would overrule Stonerock's motion to vacate his plea and issue its decision to that effect later that day. The court sustained Stonerock's challenge that his criminal history was overstated and reduced his criminal history category from III to II. The court ruled that Stonerock was ineligible for a safety valve reduction under U.S.S.G. § 5C1.2 because of his criminal history category (greater than I), and firearm enhancement. The court further concluded that the government's decision not to seek a § 5K1.1 departure (for substantial assistance) was more than amply supported, and that the Government's

4

decision was not based on an unconstitutional motive or bad faith.

Based on Stonerock's offense level of 31 (34 minus 2 for acceptance of responsibility, and minus 1 for timely notification of intent to plead guilty) and criminal history category II, Stonerock's Guidelines Range was 121 to 151 months. After considering the sentencing factors under § 3553, the district court sentenced Stonerock to 121 months' imprisonment, followed by 5 years of supervised release....

*United States v. Stonerock*, 363 F. Appx. 338, 341-43 (6th Cir. 2010).

The Court of Appeals rejected several of Stonerock's contentions but remanded the case for "a determination whether the two-point [firearm] enhancement under U.S.S.G. §2D1.1[2] is contrary to the plea agreement."  *United States v. Stonerock*, 363 Fed. Appx. 338, 350 (6th Cir. 2010).

On remand, after briefing and further proceedings, Stonerock was sentenced to 120 months.  (Doc. #269).

## III.  Stonerock's Section 2255 Motion

Stonerock's presently pending motion raises four main issues:

**Ground One**: Movant was denied his [c]onstitutional rights to the United States Constitution under equal protection of laws w[h]ere the Government refused to honor his 5K1.1 substantial assistance

---

[2]  Section 2D1.1, of the U.S. Sentencing Guidelines, provides, in part:

*Unlawful Manufacturing ... Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy*

(b) Specific Offense Characteristics

(1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

*Stonerock*, 363 Fed. Appx. at 348.

based on Movant's race in violation of the Fifth Amendment.

**Ground Two:**     Counsel was ineffective from dual representation which created a conflict of interest in violation of Movant's [c]onstitutional rights to counsel under the Sixth Amendment.

**Ground Three:**   Petitioner has been sentenced to the enhanced penalties under the Controlled Substances Act which is no longer illegal under the new announced rule of criminal law.

**Ground Four:**    The new rule announced in Carachuri[-Rosendo] and Simmons[3] are to be applied retroactive to cases on collateral review.

(Doc. #274, PageID at 1795-1807)(footnote added).

## IV.   <u>Applicable Law</u>

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitutional or laws of the United States..., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To obtain relief under §2255, a petitioner must establish: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *see Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006).  Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently

---

[3]  *Carachuri-Rosendo*, __U.S.__, 130 S.Ct. 2577 (2010) and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011).

6

results in a complete miscarriage of justice.'" *Davis v. United States,* 417 U.S. 333, 346 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 428-429 (1962)).

The Sixth Amendment presumes that a criminal defendant has "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  This right applies "at all 'critical' stages of the criminal proceedings.  Critical stages include . . . the entry of a guilty plea." *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 1405 (2012)(citations omitted); *see Lafler v. Cooper*, __U.S. __, 132 S.Ct. 1376, 1384 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "To establish constitutionally ineffective assistance of counsel, a petitioner must show that (1) his 'counsel's representation fell below an objective standard of reasonableness,' *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052, and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.* at 694, 104 S.Ct. 2052." *Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007).

**V.     Analysis**

    **A.     Substantial Assistance/Unconstitutional Motive**

Stonerock contends that his sentence was imposed because of his race (Caucasian) in violation of his Fifth Amendment right to equal protection and his right not to be discriminated against.  To establish this claim, Stonerock points out that three of his co-defendants were Mexican or "(being of Spanish race)" and that they received a downward departure in sentencing under U.S. Sentencing Guidelines §5K1.1 for substantial assistance,

7

while he did not.  He emphasizes that he offered to substantially assist the Government and that after he tried to cooperate, the Government told the media about his cooperation causing the three co-defendants to threaten his family if he persisted in helping the Government prosecute others.  He further asserts that the District Court credited the words of the three co-defendants, over his words, "based solely on unconstitutional motive of race alone and used such to deny movant a downward departure under 5K1.1."  He further contends that the District Court did not provide any reason for granting the three co-defendants a downward departure and that those co-defendants did not fulfill the requirements of a § 5k1.1 downward departure.  And he points out that the Government recommended that one of his co-defendants receive a sentencing reduction due to his substantial assistance and that the District Court characterized the reduction as a "gift."  (Doc. #274, PageID at 1795-98).

Although Stonerock litigated substantial-assistance arguments on his first direct appeal, he did not claim that the Government's refusal to file a substantial-assistance motion was based on its unconstitutional motive.  *See Stonerock*, 363 Fed.Appx. at 343-50.  He acknowledges this in his §2255 motion.  (Doc. #274, PageId at 1797).  There is no doubt that he could have raised this particular substantial-assistance claim because the District Court addressed the issue during his initial sentencing hearing on May 14, 2007.  Specifically, the District Court first determined that through the terms of the plea agreement, the Government had retained its discretion to file a substantial-assistance motion.  The District Court then ruled, "The government having retained that sole and complete discretion, the Court's inquiry is limited to whether the government's withholding of a 5K

8

was done through impermissibly unconstitutional means or constitutionally impermissible means on the basis of race or gender or age, ethnic background, religion and the like.  And there is no evidence whatsoever that it was done in this case."  (Doc. #171, PageID at 757). Stonerock also failed to raise and litigate this particular substantial-assistance claim in a direct appeal after remand and resentencing because he voluntarily dismissed that appeal.

Stonerock's failure to raise and litigate his present substantial-assistance claim on first direct appeal and on his direct appeal after remand and resentencing, *see* Doc. #280, constitutes a procedural default.  *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998).  His procedural default bars review in this §2255 proceeding unless he shows "either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"  *Vanwinkle v. United States*, 645 F.3d 365, 369-71 (6th Cir. 2011) (quoting in part *Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611).

Stonerock contends that ineffective assistance of trial counsel constitutes cause for his procedural default "where trial counsel raised such claim but failed to raise it to the level of constitutional magnitude under the Government's constitutional motives to deny Movant's recommendation for a 5K1.1 downward departure from sentencing ...."  (Doc. #274, PageID at 1797-98).  He also contends that actual prejudice exists because he "did not receive a recommendation letter for lesser sentence under such deprivation of due process which affected the integrity of the entire proceeding."  *Id*., PageID at 1798.

Stonerock's contentions fail to demonstrate cause sufficient to excuse his procedural default.  Neither his trial counsel nor his appellate counsel provided constitutionally

9

deficient representation because they made the strategic choice to advance the Stonerock's stronger substantial-assistance arguments, *see* Doc. #171, PageId at 743-49; *see also Stonerock*, 363 Fed.Appx. at 344-45, rather than choosing to litigate his much weaker (and ultimately meritless) claim that the Government declined to file a substantial-assistance motion based for an unconstitutional reason. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661 (1986) ("winnowing out weaker arguments ... and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective ... advocacy."); *see also Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; ... the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."). In addition, even if Stonerock could establish (which he cannot) that his trial or appellate counsel's performance was flawed or objectively unreasonable, Stonerock had yet another opportunity to raise his present substantial-assistance/unconstitutional-motivation claim during his appeal after remand and resentencing. Because he voluntarily dismissed that appeal, he alone committed a procedural default and he alone triggered any resulting actual prejudice. Due to the existence of these problems, he cannot show that any error by his trial or appellate counsel "actually had an adverse effect on his defense." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.

Even if Stonerock had not committed a procedural default, his present claim that the Government declined to file a substantial-assistance motion based on its race-based

10

unconstitutional motive lacks merit.

Two related issues have already been resolved on Stonerock's initial direct appeal. First, under terms of the plea agreement, the Government retained its discretion to determine whether he provided substantial assistance.  *Stonerock*, 363 Fed.Appx. at 346.  Second, the Government has met its burden of showing that he failed to provide substantial assistance. *Id*.  The Court of Appeals accepted the fact that "DEA Special Agent Hathaway testified that Stonerock did not provide certain requested financial information and did not answer questions regard co-conspirators."  *Id*.  And, as noted above, the District Court previously determined that there was "no evidence whatsoever..." that the Government had an unconstitutional motive or refused to file a substantial-assistance motion based on an unconstitutional consideration such as "race or gender or age, ethnic background, religion and the like...."  (Doc. #171, PageID at 757).

Although Stonerock's present arguments seek to show otherwise, he has much to overcome in this "cobwebbed corner of the law ...."  *United States v. Mulero-Algarin*, 535 U.S. 34, 39 (1st Cir. 2008).  "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive ... [such as] race or religion."  *Wade v. United States*, 504 U.S.181, 185-86, 112 S.Ct. 1840, 1843-44 (1992).  In order to obtain discovery or an evidentiary hearing, Stonerock must make a "substantial threshold showing."  *Id*., 504 U.S. at 186, 112 S.Ct. at 1844.  To accomplish this, he must do more than allege bad faith on the Government's part or that he in fact provided substantial

assistance.  *Id.*  He must also do more than raise "additional but generalized allegations of improper motive."  *Id.*; *see United States v. Rashid*, 274 F.3d 407, 417 (6th Cir. 2001); *see also United States v. Davenport*, 465 Fed.Appx. 500, 503-04 (6th Cir. 2012).

Stonerock has not made the substantial threshold showing necessary to demonstrate that the Government based its decision not to file a substantial-assistance motion upon his race or national origin.  The disparate-treatment and other circumstances he points to, viewed together or individually, fail to reveal any discriminatory motive by the Government because those circumstances fail to impugn, prove false, or otherwise negate the concrete nondiscriminatory reasons advanced by the Government.  As the Government explained during Stonerock's sentencing hearing, he did not cooperate fully with law enforcement when he declined to answer certain questions posed to him.  For instance, he refused to answer questions concerning, among other things, his drug distribution network in the Dayton area because he did not wish to "get any more friends in trouble."  (Doc. #171, PageID at 750).  He similarly failed to produce "information on his tax records" to the United States.  (Doc. #172, PageID at 897).  And given Stonerock's reticence to discuss these matters, the Government did not view him as credible.  (Doc. #171, PageID at 720-22).  Additionally, both the Court of Appeals and the District Court have accepted the Government's nondiscriminatory explanation.  *See id.* at 753-64; *see also Stonerock*, 363 Fed.Appx. at 346 ("DEA Special Agent Hathaway testified that Stonerock did not provide certain requested financial information and did not answer questions regarding local co-conspirators.").

Stonerock's allegations that the Government filed substantial-assistance motions for three of his co-defendants, resulting in sentences for them shorter than Stonerock's, and that his co-defendants hail from Mexico while he is American, do not help him show that the Government had a discriminatory motive. *See United States v. Snead*, 241 Fed.Appx. 62, 66 (3rd Cir. 2007)("[T]he fact that Snead received a far harsher sentence that his co-defendants does not evidence an unconstitutional motive on the Government's part. A criminal defendant has no constitutional right to be given a sentence equal in duration to that of his co-defendants. *United States v. Hart*, 273 F.3d 363, 379 (3rd Cir. 2001)."). Although he argues otherwise, Stonerock was not in the same or similar circumstances as three of his co-defendants due to his failure to substantially assist the Government. And even assuming *arguendo* that Stonerock has presently established he provided substantial assistance, "the mere rendition of assistance – even substantial assistance does not give rise to an inference that the government's decision not to file ... is driven by an illegitimate motive." *United States v. Mulero-Algarin*, 535 F.3d 34, 39-40 (1st Cir. 2008) (citation omitted). In addition, his longer sentence than three of his co-defendants and the other circumstances he relies on do not constitute direct evidence of discrimination, and Stonerock has not pointed to any statement by the Government's attorneys or law enforcement officers even suggesting that its decision was premised upon his race or national origin. At best for Stonerock, he has merely indicated that under the circumstances he alleges, the Government would have a theoretical reason not to file a substantial-assistance motion for three of his co-defendants. Those circumstances, however, fail to connect his or his co-defendants' race or national

13

origin with the Government's decision not to file a substantial-assistance motion for Stonerock or its actual decision to file substantial-assistance motions for three of his co-defendants. *See Sullivan v. United States*, 11 F.3d 573, 575 (6th Cir. 1993) ("if the government concludes by a rational assessment that a departure request is not warranted, then no relief is available.").

In light of the above discussion, Stonerock has not made the substantial threshold showing of the Government's unconstitutional motive necessary to warrant discovery or an evidentiary hearing. *See Wade*, 504 U.S. at 186, 112 S.Ct. 1844; *see also Mulero-Algarin*, 535 F.3d at 39.

Accordingly, Stonerock is not entitled to appointment of counsel, discovery, or an evidentiary hearing on his first claim because it is meritless.

## B.    Ineffective Assistance of Counsel

Stonerock contends that his counsel provided constitutionally ineffective assistance due to an actual conflict of interest resulting from his counsel's – Matthew Arntz's – representation of Stonerock in the present case and attorney Arntz's simultaneous representation of Stonerock's co-defendant Sammons in a case then pending in Arizona state court. Stonerock maintains that because of attorney Arntz's conflict of interest, he could not protect both Stonerock's and Sammons' respective simultaneous interest in obtaining a substantial-assistance motion from prosecutors.

The Government contends that Stonerock has not adequately articulated how his attorney's purported conflict of interest impacted his case and, as a result, his ineffective-

assistance claim lacks merit.

Stonerock has sufficiently alleged the existence of Arntz's possible conflict of interest due to his simultaneous representation of Stonerock in the present case and his co-defendant Sammons in a state case pending in Arizona.  Contrary to the Government's contentions, Stonerock has also adequately described the prejudice potentially caused to his defense in the present case given the reasonable possibility that his interest obtaining a substantial-assistance motion from the Government conflicted with Sammons' simultaneous interest in obtaining such a motion.  "The presumption of prejudice ... arises [under *Strickland*] where the defendant demonstrates that his attorney actively represented conflicted interests."  *Moss v. United States*, 323 U.S. 445, 455 (6th Cir. 2003).  Stonerock alleges that both he and Sammons sought a substantial-assistance motion by cooperating with the Government.  Given this, whoever first provided the Government with substantial assistance would be more likely to obtain the desired motion than the Defendant who arrives later at the Government's doorstep.  If Stonerock demonstrates that these alleged conflicting interest existed, Arntz's simultaneous representation of Stonerock and Sammons would give rise to the presumption of prejudice.  *See Moss*, 323 U.S. at 455.

In addition, the Court of Appeals on Stonerock's direct appeal declined to address his claim of ineffective assistance of counsel arising from Arntz's conflict of interest. Stonerock alleged during his direct appeal that Arntz's conflict led him to incorrectly reassure Stonerock that he would receive the benefit of the sentencing safety valve under U.S.S.G. § 5C1.2.  This, in turn, led Stonerock to plead guilty based on "conflicted and

incorrect advice" without which he would not have pled guilty.  *Stonerock*, 363 Fed.Appx. at 344.  In declining to address this claim, the Court of Appeals held that it "is best addressed in a post-conviction proceeding under 28 U.S.C. §2255."  *Stonerock*, 363 Fed.Appx. at 344-45.  And here is where the Arntz conflict issue stands, awaiting further development in the record.  *See id*.

The Court of Appeals also observed, "Stonerock notes that the district court did not realize this [Arntz's potential conflict] until after Stonerock had pled guilty on Arntz's advice."  *Id*., at 345.  And the Court of Appeals recognized that after the Arntz-conflict issue was raised in the trial court, "there was a discussion between the court, counsel for [co-defendant] Mobley, and counsel for Stonerock, Arntz and Katchmer, regarding delaying sentencing in this case until the Arizona matter was resolved....  The conflict issue never rose again.  The record is thus inadequately developed to address this issue as well."  *Id*. Again, the Arntz conflict issue awaits further development in the record.  *See id*.

It is worth pausing to note that Stonerock's pro se § 2255 motion and other pending motions do not raise the exact ineffective assistance of counsel/conflict of interest grounds he raised on direct appeal.  He instead focuses only on the alleged negative impact Arntz's conflict had on his attempt to obtain a substantial-assistance motion from the Government. However, because the Court of Appeals characterized the issues Stonerock raised on direct appeal as needing further development in a § 2255 proceeding, Stonerock should be appointed counsel to represent him on the main issue of whether Arntz provided Stonerock with constitutionally ineffective assistance due to Arntz's conflict of interest.  It would then

16

be up to Stonerock's newly appointed counsel to determine what specific grounds Stonerock should advance in support of this claim in this § 2255 proceeding.

Lastly, for all the above reasons, most notably the Court of Appeals' characterization of the record as "inadequately developed," 363 Fed. Appx. at 345, Stonerock should be afforded an evidentiary hearing in connection with his ineffective assistance of counsel/conflict of interest claim.  In addition, on direct appeal, the Government concluded that Stonerock "suffered no prejudice even if he received deficient performance from his counsel, which factually he did not."  *United States v. Stonerock*, 2008 WL 6122821.  This argument, read along with the Court of Appeals' decision, reveals the existence of factual disputes related to Stonerock's ineffective assistance/conflict of interest claim, thus necessitating an evidentiary hearing.[4]  *See Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007); *see also Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).

C.    ***Carachuri-Rosendo*, *Simmons*, *Powell* and Retroactivity**

On remand, the District Court calculated Stonerock's sentence beginning with his Gross Offense Level of 32 and his Criminal History category of II.  The District Court then recognized that a minimum mandatory sentence of 120 months applied.  And the District Court concluded, "the non-binding sentencing guideline range is in fact..." 120 to 121

---

[4]  Of course, the need for an evidentiary hearing alone says nothing about whether Stonerock will prevail on his ineffective assistance of counsel/conflict of interest claim. *See Valentine*, 488 F.3d at 334 ("The defendant's burden to show his right to a hearing is significantly lower than his burden to show he is entitled to § 2255 relief.").

months.  (Doc. #287, PageID at 1888).  Ultimately, the District Court sentenced Stonerock to 120 months incarceration, which he is presently serving.  *Id*.; *see* Doc. #269.

Stonerock's third and fourth claims contend that the District Court should have sentenced him below the mandatory minimum of 120 months because his prior state convictions resulted in sentences lasting less than one year and, as a result, his prior convictions did not constitute felonies for the purpose federal sentencing.  He supports this contention by relying on *Carachuri-Rosendo*, __U.S.__, 130 S.Ct. 2577 (2010) and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011).  He further contends that the application of *Carachuri-Rosendo* and *Simmons* would have reduced his criminal-history points to one point at most, thus making him eligible for the safety-valve provision of the Sentencing Guidelines.  He further contends that the new substantive rule established in *Carachuri-Rosendo* and *Simmons* apply retroactively in the present case.

Stonerock committed a procedural default by not raising his third and fourth claims in his direct appeals.  *See Bousley*, 523 U.S. at 622, 118 S.Ct. at 1611.  He acknowledges that he did not raise his third and fourth claims on his first direct appeal or in his appeal after remand and resentencing.  (Doc. #274, PageID at 1804, 1808).  He explains that he did not raise these claims because they were not available to him until the Supreme Court issued its decision in *Carachuri-Rosendo*, __U.S.__, 130 S.Ct. 2577.  He further points out that the Supreme Court did not resolve in *Carachuri-Rosendo* whether it applied retroactively to cases pending on collateral review.

Although Stonerock is correct that *Carachuri-Rosendo* was not decided until June 14,

18

2010 – after his first sentencing hearing, *Carachuri-Rosendo* was decided four and one-half months before the Court of Appeals issued its January 26, 2010 decision on Stonerock's first direct appeal.  Most significantly, *Carachuri-Rosendo* was issued well before Stonerock's sentencing hearing on remand on February 14, 2012.  Given this timing, Stonerock could have raised his *Charachuri-Rosendo* claims at his resentencing hearing on remand or in a subsequent direct appeal.  Consequently, *Carachuri-Rosendo* does not help Stonerock show cause for his procedural default in not raising it during his resentencing or in an ensuing direct appeal.  In addition, no retroactivity issue exists as to *Carachuri-Rosendo* possible relevance to Stonerock's resentencing or subsequent direct appeal, in light of the fact that *Carachuri-Rosendo* existed at the time of those proceedings.

Accordingly, Stonerock has not shown cause or prejudice for his procedurally defaulted third and fourth claims.

## IT THEREFORE IS RECOMMENDED THAT:

1. Stonerock's Pro Se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence (Doc. # 274) be DENIED IN PART and that his first, third, and fourth grounds for relief be DISMISSED;

2. Stonerock's Motion for Evidentiary Hearing (Doc. #276) be GRANTED IN PART and his third ground for relief be set for an evidentiary hearing; Stonerock's Motion for Evidentiary Hearing (Doc. #276) be DENIED in remaining part;

3. Stonerock's Motion for Appointment of Counsel (Doc. #277) be GRANTED for the limited purpose of appointing counsel to represent Stonerock on his third ground for relief and at the evidentiary hearing;

4.      Stonerock's Motion for Production of Documents (Doc. # 274, PageID at 1818) be DENIED without prejudice to renewal, if warranted, by Stonerock's appointed counsel;

5.      Stonerock's remaining Motions (Doc. #s 275, 290) be DENIED as meritless.


February 26, 2013

                                      <u>      s/Sharon L. Ovington      </u>
                                                Sharon L. Ovington
                            Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).